**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JILLYN PETERSON, *et al.*, *individually and on behalf of those similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>INSURANCE SERVICES OFFICE, INC., *et al.*,<br><br>Defendants. | Civil Action No. 20-13223 (SDW) (AME)<br><br><br>**OPINION**<br><br><br>April 13, 2021 |

**WIGENTON,** District Judge.

Before this Court is Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 1132(e)(1) and (e)(f). Venue is proper pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

I.  **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

This case centers on the alleged mismanagement of the ISO 401(k) Savings and Employee Stock Ownership Plan (the "Plan") by its fiduciaries in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104.[1] This Court writes exclusively for the parties,

---

[1] "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotation marks and citations omitted). Under ERISA, Congress "define[d] the circumstances under which a person or entity is a fiduciary, sets forth the duties of these fiduciaries, and provides various causes of action designed to

1

who are familiar with the allegations and sets forth the relevant background only; allegations necessary to decide the present motion are discussed in Section III of this opinion.

Plaintiffs were participants in the Plan during their respective employment[2] and bring this action individually and on behalf of a purported class against the Plan's alleged fiduciaries (collectively, "Defendants"), including: Insurance Services Office, Inc. ("ISO"), the Plan Administration Committee of Insurance Services Office, Inc. ("Administrative Committee"), and the Trusts Investment Committee of Insurance Services Office, Inc. ("Investment Committee") (together, the "Committee Defendants").  (D.E. 1 ¶¶ 1, 18–21.)  The Plan is considered a "defined contribution" or "individual account" employee benefit plan under ERISA such that a participant's retirement benefits depend on his or her account contributions.  (*Id.* ¶ 44.)  Between 2014 and 2018, the Plan had at least $1.1 billion in assets and as many as 7,787 participants, rendering it one of the largest defined contribution plans in the United States.  (*Id.* ¶¶ 10, 122.)  Accordingly, the Plan is considered a "jumbo plan" in the marketplace and yields substantial bargaining power as it relates to the fees and expenses it deducted against participants' investments.  (*Id.* ¶ 10.)

Plaintiffs aver that from September 24, 2014 through the date of judgment (the "Class Period"), the Committee Defendants breached their fiduciary duties of prudence and loyalty in violation of ERISA, § 29 U.S.C. § 1104(a), by imprudently managing the Plan's investments and recordkeeping fees (Count I) (*id.* ¶¶ 131–37), and that ISO and the Administrative Committee failed to adequately monitor the Committee Defendants as Plan fiduciaries (Count II) (*id.* ¶¶ 138–44).[3]  Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6).  (D.E. 11.)  Plaintiffs

---

promote the enforcement of these duties."  *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013).

[2] The Plaintiffs are Jillyn Peterson, Gabe Hare, Robert Heynen, and Adam Krajewski (collectively, "Plaintiffs").  (D.E. 1 ¶¶ 18–21.)  Individuals may participate in the Plan if they are regular, full-time employees.  (*Id.* ¶ 45.)

[3] Plaintiffs lodge Count II against ISO and the "Committee Defendants" (D.E. 1 ¶ 139); however, Plaintiffs clarified that they bring Count II specifically against the Administrative Committee, which purportedly retained the ability to

opposed and Defendants replied.  (D.E. 16; D.E. 17.)

## II.  LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 555).  As the Supreme Court has explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 556–57, 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556–57, 570).

---

appoint members of the Investment Committee.  (D.E. 16 at 40 n.24.)  Accordingly, this Court construes Count II against ISO and the Administrative Committee only.

### III. DISCUSSION

#### A. Statutory Standing

As a preliminary matter, this Court rejects Defendants' argument that Plaintiffs lack standing under ERISA for claims that arose before October 1, 2016 and after January 31, 2019.[4] (D.E. 11-1 at 9–10.) A challenge to plaintiff's "statutory" standing presents an inquiry of statutory interpretation, which "ask[s] whether a plaintiff 'falls within the class of plaintiffs whom Congress has authorized to sue.'" *Nat'l Health Plan Corp. v. Teamsters Loc.*, 469, 585 F. App'x 832, 835 (3d Cir. 2014) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)). Pursuant to 29 U.S.C. § 1132(a)(2), a "participant, beneficiary or fiduciary" may bring a civil action for breach of fiduciary duty. *See id.* Defendants do not contest that Plaintiffs are Plan participants within § 1132(a)(2) (*see* D.E. 11-1, D.E. 17); however, they dispute whether the Class Period may begin on September 24, 2014, when at least one plaintiff did not participate in the Plan until October 1, 2016. (D.E. 11-1 at 9–10.)

The Supreme Court has stated that actions under § 1132(a)(2) are "brought in a representative capacity on behalf of the plan as a whole" such that remedies "protect the entire plan." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 & n.9 (1985); *see Graden v. Conexant Sys. Inc.*, 496 F. 3d 2d 291, 295 (3d Cir. 2007) ("[T]he plan takes legal title to any recovery [for breach of fiduciary duties], which then inures to the benefit of its participants and beneficiaries."). Because Plaintiffs allege that Defendants' imprudent course of conduct, which arose prior to their participation in the Plan, caused injuries to themselves (*see* D.E. 1 ¶¶ 22, 135, 143; *see id.* ¶¶ 72,

---

[4] Defendants believe that Plaintiffs' Article III standing arguments are inapplicable. (D.E. 17 at 6.) However, courts have recognized that a plaintiff may proceed under ERISA, 29 U.S.C. § 1132(a)(2), when he has Article III standing and brings claims on behalf of the plan or other participants. *See e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) (holding that plaintiff had statutory standing under ERISA because he had Article III standing and concluding that "§ 1132(a) provides [plaintiff] a cause of action to seek relief for the entire [p]lan"); *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998).

4

74, 79) they "may seek relief under § 1132(a)(2) that sweeps beyond [their] own injury." *See Boley v. Universal Health Servs., Inc.*, No. 20-2644, 2020 WL 6381395, at *3 (E.D. Pa. Oct. 30, 2020) (quoting *Braden*, 588 F.3d at 593); *see also McCool v. AHS Mgmt. Co., Inc.*, No. 19-1158, 2021 WL 826756 (M.D. Tenn. Mar. 4, 2021). In addition, at this juncture, the purported removal of the challenged funds from the Plan is an insufficient basis to end the Class Period on January 31, 2019. (*See* D.E. 11-1 at 10.) Accordingly, this Court turns to the sufficiency of the allegations.

### B. Count I: Breach of Fiduciary Duties of Loyalty and Prudence
### (*against the Committee Defendants*)

To assert a claim for breach of fiduciary duty under ERISA, Plaintiffs must allege that: "(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan." *Chaaban v. Criscito*, 468 F. App'x 156, 161–62 (3d Cir. 2012) (citing *Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir. 2007)).[5] Plaintiffs aver that the Committee Defendants breached their fiduciary duties of prudence and loyalty by failing to (i) manage the Plan's investments, (ii) investigate other low-cost, alternative investment options, and (iii) monitor recordkeeping service fees. (*Id.* ¶¶ 131–37.)

ERISA imposes fiduciary duties of prudence and loyalty on plan fiduciaries. 29 U.S.C. § 1104(a)(1). Fiduciary duties must be performed prudently using "the care, skill, prudence and diligence" of similarly situated prudent persons in conducting a similar enterprise with parallel goals. *Id.* § 1104(a)(1)(B). Plan fiduciaries must execute their duties loyally, that is, "solely in the interest of the participants . . . for the exclusive purpose of: . . . (i) providing benefits to participants . . . and (ii) defraying reasonable expenses of administering the plan." *Id.* § 1104(a)(1). Moreover, fiduciaries are required to "diversify[] the investments of the plan so as to minimize the

---

[5] Defendants do not dispute that they are fiduciaries under ERISA. (*See generally* D.E. 11-1.) Thus, this Court focuses on whether Plaintiffs adequately allege a breach of fiduciary duties.

risk of large losses, unless under the circumstances it is clearly prudent not to do so." *Id.* § 1104(a)(1)(C).

In assessing the pleading, the Third Circuit's decision in *Sweda v. University of Pennsylvania*, which reversed the dismissal of a similar breach of fiduciary duty claim, provides pertinent guidance. 923 F.3d 320 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020). Under *Sweda*, this Court's analysis requires a "holistic approach" to the allegations viewed under the totality of circumstances, including "the range of investment options" the "reasonableness of fees, selection and retention of investment options, and practices of similarly situated fiduciaries." *Id.* at 331 (stating that the court may not dissect a complaint "'piece by piece to determine whether each allegation, in isolation, is plausible'"). Notably, Plaintiffs need not "directly allege how [Defendants] mismanaged the Plan," so long as there is "substantial circumstantial evidence" which allows the court to "reasonably infer that a breach had occurred." *See id.* at 332 (internal quotations omitted). For example, a breach may occur if a fiduciary fails to monitor investments or plan expenses, or if he does not remove imprudent investments. *Id.* at 328.

*Sweda* also expanded on a prior Third Circuit decision, *Renfro v. Unisys Corporation*, which upheld a Rule 12(b)(6) dismissal of a complaint that lodged a breach of fiduciary duty claim under a different set of alleged facts. 671 F.3d 314 (3d Cir. 2011).[6] Specifically, *Sweda* clarified that *Renfro* "did *not* hold[] . . . that a meaningful mix and range of investment options insulates plan fiduciaries from liability for breach of fiduciary duty" because by doing so, fiduciaries could

---

[6] In *Renfro*, Plaintiff rested his claim on the fiduciaries' choice to include a variety of retail mutual funds and did not take issue with any specific investment option. 671 F.3d at 326. Plaintiff did not compare his plan's investment options with other less costly, similar alternatives. *See Pinnell v. Teva Pharm. USA, Inc.*, No. 19-5738, 2020 WL 1531870, at *3 (E.D. Pa. Mar. 31, 2020) (citing Second Amended Complaint at ¶¶ 33-99, *Renfro v. Unisys Corp.*, No. 07-2098, 2010 WL 1688540 (E.D. Pa. Apr. 26, 2010)). The Third Circuit found that "the range of investment options and the characteristics of those included options—including the risk profiles, investment strategies, and associated fees—are highly relevant and readily ascertainable facts against which the plausibility of claims challenging the overall composition of a plan's mix and range of investment options should be measured." *Renfro*, 671 F.3d at 327.

6

skirt liability by including an array of investment options notwithstanding their price or poor marketplace performance. *Sweda*, 923 F.3d at 330 (emphasis added) (stating that because "[p]ractices change over time . . . bright line rules would hinder courts' evaluation of fiduciaries' performance against contemporary industry practices").

### i. Failure to Manage and Investigate Investments

Under a holistic lens, the allegations plausibly support Plaintiffs' claim that the Committee Defendants failed to act with the level of care, skill, prudence, and diligence required under ERISA, 29 U.S.C. § 1104(a)(1). For example, Plaintiffs allege that Defendants: (1) knew or should have known that cheaper share classes and other investment options existed during the Class Period (D.E. 1 ¶¶ 89–92, 102, 108); (2) failed to investigate the availability of lower cost share classes and collective trusts—a cheaper investment alternative given the Plan's large size (*id.* ¶¶ 94, 98, 100–104, 134); (3) failed to utilize the Plan's bargaining power to negotiate low-cost investment alternatives (*id.* ¶¶ 92, 104); and (4) retained multiple actively managed funds under the Plan, despite their "grossly excessive fees" in contrast to materially similar alternatives, including both actively and passively managed funds (*id.* ¶¶ 78, 111–113; *see id.* ¶ 134).[7] Plaintiffs maintain that these investment alternatives would have been investigated by prudent fiduciaries

---

[7] The Complaint highlights various examples of cheaper investment alternatives and expense ratio comparisons. (*See id.* ¶¶ 80, 87–89, 101, 109–10.) Although Defendants challenge the accuracy and ultimate viability of Plaintiffs' comparisons and data (*see* D.E. 11-1 at 12–13, 17, 21–22), and contend that the Investment Committee did not have knowledge of "cumulative hindsight data" (*see id.* at 18), these arguments are factual disputes that will not be considered at the motion to dismiss stage. *See Silva v. Evonik Corp.*, No. 20-2202, 2020 U.S. Dist. LEXIS 250206, at *13 (D.N.J. Dec. 30, 2020) ("'[W]hether the alternative funds [p]laintiff[s] suggest[ ] are apt comparisons' is a question of fact unsuitable for resolution on a motion to dismiss.") (quoting *Nicolas v. Trustees of Princeton Univ.*, No. 17-3695, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017)); *see Pinnell*, 2020 WL 1531870, at *5 (citing *Sweda*, 923 F.3d at 333). Rather, this Court finds that the Complaint contains sufficient circumstantial evidence to proceed to discovery. *See Pinnell*, 2020 WL 1531870, at *4.

Similarly, at this juncture, it is not appropriate to resolve the impact, if any, of (i) Defendants' apparent offering of "low-cost index funds" or "prudent" share classes prior to the removal of the challenged funds from the Plan, (ii) the purported existence of three Plan funds that cost less than the claimed median expense fee, and (iii) the alleged replacement of the JPM Target Date Suite with collective trusts. (*See* D.E. 11-1 at 14–16, 18–20, 27.) Even if Defendants' contentions are correct, it remains plausible that they engaged in imprudent conduct by not acting earlier.

and, as a result, investments with cheaper costs should have been selected. (*See id.* ¶¶ 89, 91–94, 100, 102–04, 108, 112; *see also id.* ¶¶ 106–07 (citing various publications and studies).) Moreover, Plaintiffs allege that most of the Plan's funds charged higher-than-average fees, as compared to median expense ratios in the same category.[8] (*See id.* ¶¶ 80–81 (citing a study from the Investment Company Institute), ¶¶ 108–10.)

Based on these allegations, this Court may infer that the Committee Defendants failed to perform their fiduciary duties. *See, e.g.*, *Pinnell*, 2020 WL 1531870, at *5 (denying a motion to dismiss an ERISA breach of fiduciary duty claim where plaintiffs alleged that defendants retained expensive investments when lower-cost alternatives were available, and listed investment comparisons with lower fees and expense ratios in the complaint, which more closely aligned with the allegations in *Sweda*); *see also Sweda*, 923 F.3d at 328–29 (stating that fiduciaries must "consider a plan's 'power . . . to obtain favorable investment products'" particularly when nearly identical products are available at a lower cost) (quoting *Tibble*, 843 F.3d at 1198).

### ii. Failure to Monitor and Control Recordkeeping Fees

In addition, Plaintiffs aver that the Committee Defendants failed to prudently monitor and control the Plan's recordkeeping fees. (D.E. 1 at ¶¶ 118, 122–30, 134.) The alleged failure to "reduce recordkeeping costs through negotiation or the solicitation of competing bids may" form the basis of a breach of fiduciary duty claim. *Silva*, 2020 U.S. Dist. LEXIS 250206, at *15 (citing *Sweda*, 923 F.3d at 332); *see also Pinnell*, 2020 WL 1531870, at *5.

Here, Plaintiffs sufficiently allege a plausible breach of fiduciary duties claim. For

---

[8] Defendants maintain that Plaintiffs cannot sustain their imprudence claim because cost differences in share classes and median expense fees were *de minimis*. (D.E. 11-1 at 15–17.) However, as recognized in *Silva*, even relatively small cost savings may have a larger impact where money spent on unnecessary fees would have been applied towards participants' investments, resulting in "lost investment opportunity" over time. 2020 U.S. Dist. LEXIS 250206, at *14 (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016)). Accordingly, this Court further agrees that whether a fee is "excessive" cannot be assessed against a "categorical benchmark." *See id.* (citing *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 636 (D.N.J. 2010)).

example, Plaintiffs assert that recordkeeping rates for large plans average about $35 per participant while the Plan's recordkeeping fees averaged over $89 per participant during the Class Period (except for 2014), and that fees increased each year from 2014 to 2018.  (D.E. 1 ¶¶ 122, 127–28.) Despite the marketplace's downward trend of lower recordkeeping fees, Plaintiffs maintain that the Plan could have secured "recordkeeping services that were comparable to or superior to the typical services provided by the Plan's recordkeeper at a lower cost." (*Id.* ¶ 129; *see also id.* ¶ 125 (citing a study for the premise that when plans increase in size, the corresponding recordkeeping costs should decrease).)  Lastly, Plaintiffs assert that the Committee Defendants did not negotiate or attempt to obtain competing bids via the standard Request for Proposal process.  (*Id.* ¶¶ 120–21, 124; *see id.* ¶ 123.)  These allegations support the inference that a breach of fiduciary duty occurred.[9]  *See, e.g.*, *McCool*, 2021 WL 826756, at *5 (noting that plaintiffs are not required "to rule out every possible lawful explanation for the allegedly high fees charged in administering the [p]lan" on a motion to dismiss).  For the reasons stated above, Defendants' motion to dismiss Count I for breach of ERISA's fiduciary duty of prudence is **DENIED**.

### iii. Plaintiffs' Loyalty Claim

Defendants separately move to dismiss Count I premised on their purported breach of ERISA's duty of loyalty because Plaintiffs attempt to use the same allegations to support both a breach of the duty of prudence and loyalty.  (D.E. 11 at 28–29.)  Plaintiffs seemingly admit that they have pleaded a "breach of the intertwined fiduciary duties of loyalty and prudence as a single

---

[9] Although Defendants contend that Plaintiffs' recordkeeping calculations are incorrect (D.E. 11-1 at 23–25), Plaintiffs maintain that they lacked access to accurate information.  (D.E. 16 at 36 n.22.)  This factual dispute does not halt Plaintiffs' claim at this time.  *See Silva*, 2020 U.S. Dist. LEXIS 250206, at *17–18 (citing *Pinnell*, 2020 WL 1531870, at *5–6).  In the same vein, the Third Circuit has stated that any issues concerning the "reasonableness of 'compensation for services' are 'inherently factual question[s].'" *Sweda*, 923 F.3d at 329 (quoting DOL Advisory Opinion 2001-01A, 2001 WL 125092, at *1); *see also Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1066 (M.D. Tenn. 2018) ("Whether fees are unreasonable is an issue that should be taken up at summary judgment.").

9

count."[10] (D.E. 16 at 40.) ERISA breach of loyalty claims must be premised on allegations that defendants acted to either benefit themselves or a third party. *Silva*, 2020 U.S. Dist. LEXIS 250206, at *19; *McCool*, 2021 WL 826756, at *4 (noting that mere incidental benefits to defendants or third parties are insufficient to allege a breach of loyalty claim). Because Plaintiffs concede that their allegations for each type of breach are intertwined, and because there are no allegations that Defendants' conduct amounted to self-dealing or benefitted a thirty party (*see generally* D.E. 1),[11] Defendants' motion to dismiss Plaintiffs' ERISA breach of loyalty claim is **GRANTED**. *See e.g.*, *Silva*, 2020 U.S. Dist. LEXIS 250206, at *19–20 (granting motion to dismiss in part where plaintiffs' loyalty claim was subsumed under their imprudence claim without separate allegations concerning motive or benefit) (citing *Nicolas*, 2017 WL 4455897, at *3).

### C. Count II: Failure to Adequately Monitor Other Fiduciaries
### (*against ISO and the Administrative Committee*)

Finally, Plaintiffs maintain that ISO and the Administrative Committee did not adequately monitor the Committee Defendants because they failed to (i) evaluate the Committee Defendants' performance, (ii) review the processes for investment evaluations and investigate other low-cost, alternative investment options, and (iii) remove under-performing committee members (Count II). (*Id.* ¶¶ 138–44.) Defendants argue that Plaintiffs merely recite the elements of a monitoring claim and that Count II must fail because Count I is insufficiently pleaded. (D.E. 11 at 29–30.)

---

[10] Although Plaintiffs maintain that courts regularly deny a motion to dismiss for failure to plead separate facts concerning a breach of loyalty (*see* D.E. 16 at 40 (citing *Pinnell*, 2020 WL 1531870, at *6)), the *Pinnell* court did not address this issue. *See generally* 2020 WL 1531870.

[11] Plaintiffs argue that based on their imprudence allegations, it is reasonable to infer that Defendants' retention of high-cost investments with revenue sharing were done to "save itself costs at the expense of Plan participants[] and/or" for the benefit of its recordkeepers. (D.E. 16 at 39.) Tellingly, Plaintiffs do not cite to any allegations regarding Defendants' purported motives, nor did this Court locate motive allegations in its review of the Complaint. (*See generally* D.E. 1.) Although *Johnson v. Providence Health & Services* inferred a breach of loyalty claim based on circumstantial evidence, that case is not binding in this Court. No. 17-1779, 2018 WL 1427421, at *9 (W.D. Wash. Mar. 22, 2018).

Any individual who is authorized to appoint and remove plan fiduciaries has a fiduciary duty under ERISA to monitor those appointed fiduciaries. *Graden v. Conexant Sys., Inc.*, 574 F. Supp. 2d 456, 466 (D.N.J. 2008) (collecting cases). Under the Department of Labor's relevant bulletin regarding ERISA's fiduciary duty to monitor, those who appoint plan fiduciaries should review the appointees' performance "[a]t reasonable intervals . . . [and] in such [a] manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards." *Id.* (quoting 29 C.F.R. § 2509.75-8 at FR-17). Akin to *Silva*, Plaintiffs allege that ISO and the Administrative Committee maintained the authority to appoint and remove committee members and had no system for monitoring or evaluating the Committee Defendants' performance (*see* D.E. 1 ¶¶ 139, 142). *See* 2020 U.S. Dist. LEXIS 250206, at *20. Thus, the allegations amount to more than a mere recitation of legal elements.

In addition, failure to monitor claims are derivative of a fiduciary's independent breach of his or her duty. *In re Schering-Plough Erisa Litig.*, No. 08-1432, 2010 WL 2667414, at *7 (D.N.J. June 29, 2010). This Court already found that Count I may proceed for the Committee Defendants' alleged breach of ERISA's duty of prudence. Accordingly, Defendants' argument that "there is no predicate basis for a failure to monitor claim" is unavailing, and their motion to dismiss Count II is **DENIED**. (*See* D.E. 11-1 at 30.)

### IV.     CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. An appropriate order follows.

/s/ Susan D. Wigenton  
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:     Clerk  
cc:        Andre M. Espinosa, U.S.M.J.  
             Parties